THE METROPOLITAN STREET RAILWAY COMPANY V. CHARLES FAWCETT.

No. 15,024. (92 Pac. 543.)

SYLLABUS BY THE COURT.

1. STREET-RAILWAYS—*Injury to Traveler—Negligent Operation of Cars.* In an action brought by the driver of a carriage against a street-car company for personal injuries resulting from the collision of a carriage and a car, evidence is pertinent of the management of the car and of the conduct of the driver from the time the horse manifested such fear of the approaching car as should have attracted the attention of the motor-man to the time of the collision.

2. ——— *Proximate Cause—Contributory Negligence—Question for the Jury.* In such case whether the proximate cause of the collision was the negligence of the motor-man and whether the driver was guilty of contributory negligence were, the evidence as to the circumstances being conflicting, questions for the determination of the jury under proper instructions; and the jury in solving such questions should take into consideration the circumstances shown by the evidence during the time specified in the preceding paragraph.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge.   Opinion filed November 9, 1907.   Affirmed.

*Miller, Buchan & Miller,* and *Samuel Maher,* for plaintiff in error.

*Getty & Hutchings,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.:  The Metropolitan Street Railway Company, defendant below, instituted this proceeding in error to reverse a judgment for $900 which Charles Fawcett obtained against it in the court of common pleas of Wyandotte county.

It is first contended that the court erred in overruling the demurrer of the company to the plaintiff's evidence.  We have read the evidence, and, considering it, as it was the duty of the court to do, in the light most favorable to the plaintiff, and indulging all reasonable inferences in his favor, we cannot say that the court erred in determining that the plaintiff had by the evidence made out a *prima facie* case, and hence we cannot say that the court erred in overruling the demurrer.  Our view will more fully appear in the discussion of the exceptions to the instructions to the jury.

It is contended that instructions Nos. 3, 4, 5 and 6 are erroneous.  The only criticism offered to instruction No. 3 is that there is no reference therein to any negligence of which the plaintiff may have been guilty. The purpose of the instruction was to impress upon the jury what it was essential for the plaintiff to prove—what facts he must establish by the greater weight of the evidence before he was entitled to recover any damages; and the instruction is correct for that purpose.  The defendant had alleged contributory negligence on the part of the plaintiff, and the burden of establishing this fact by a preponderance of all the evidence rested upon it, hence the propriety

of omitting any reference thereto in enumerating the necessary requisites of plaintiff's proof. The plaintiff, to establish his case, was not required to prove that he was not guilty of contributory negligence.

The plaintiff was driving a horse in a northeasterly direction along the easternmost of two parallel street-car tracks, and the defendant's street-car that caused the injury was approaching from the opposite direction on the other track. Between the tracks was a space of six or seven feet. The plaintiff testified that when his horse frightened at the approaching car he could have turned to the right off of the car-track into the street. He also said that the surface of the car-track was eight inches above the surface of the street, and that there was standing water and mud along the side of the car-track. Neither he nor any other witness testified that after his horse became frightened he could have turned off there without danger. In the fourth instruction the court told the jury that under the circumstances it was the duty of the plaintiff to take such means to avoid a collision as an ordinarily careful and prudent person would have taken under the same circumstances. Also, that defendant's servants had a right to expect that, if plaintiff's horse was frightened at the approaching car, he would turn off the track if there was no apparent danger in so doing; that this, however, did not give them the right to operate the car at a high and dangerous rate of speed, after it became apparent to them or should have become apparent to them that the horse was frightened at the approaching car and that the plaintiff could not or would not turn off the track; and it would be their duty under such circumstances promptly and diligently to use the means at their command to lessen or remove the danger of injury to the plaintiff by reason of a nearer approach of the car.

We think this instruction is proper, and do not believe that the jury were likely to understand the expression "would not turn off the track" as implying

that the plaintiff had the right sullenly to hold to the track without any reason therefor.  By the instruction the court informed the jury as to the duty of the defendant's servants under various conditions or situations suggested by the evidence.  For this purpose the instruction told the jury, in substance, that it was the duty of such servants to use all means at their command to lessen or remove the danger of injury to the plaintiff whenever it became apparent to them that the plaintiff could not (by reason of being unable to control the horse) or would not (for some reason apparent to them) turn off the track.  The phrases in parentheses are interpolated as a fuller expression or suggestion of what should reasonably be understood from the language used without such phrases.

The fifth and sixth instructions also treat of the duty of plaintiff and of defendant's servants under, it would seem, every possible situation suggested by any portion of the evidence, and tell the jury that if they find that the plaintiff failed to exercise such care as a person of ordinary prudence would have exercised under the same circumstances he was guilty of contributory negligence and cannot recover; that if the plaintiff was not negligent, and if the defendant's servants failed to exercise ordinary care from the view-point of what they saw or should have seen, then the plaintiff should recover his damages, the true measure of which was given and of which there is no complaint.

Were we to criticize the instructions we would be inclined to say that in the apparent effort to present every possible phase of the case with studied and technical accuracy, which seems to have been attained, possibly too great prolixity resulted.  The defendant, however, contends that the attention of the jury should have been confined to the time after the horse bolted from the track upon which the plaintiff was endeavoring to drive it to the track upon which the car was approaching; in short, the logic of the argu-

ment is that the defendant's servants were under no obligation until that time to take any precautions whatever. The court was right. It may be asserted as a general proposition of law that whenever a motor-man in charge of a swiftly running car observes (and he must constantly watch) a horse or team which is being driven in close proximity to the car-track, and which manifests fright, it is his duty to reduce his speed, preparatory to a sudden stop if it becomes necessary. His precaution should be proportionate to the apparent danger. If it be generally true that a single driving horse, frightened by an object approaching from the front, is more difficult to control than a two-horse team, and more likely to wheel around so suddenly as to upset the carriage and its occupants, the motor-man must recognize this fact and act accordingly.

The questions of negligence and contributory negligence in this case were questions of fact to be determined by the jury, under proper instructions from the court, which we have concluded were properly given. The motor-man testified that as his car approached the place of the accident it was moving eight or ten miles an hour, and that with the appliances thereon he could stop it in seventy-five feet; also, that he used all the appliances to stop the car when it was about fifteen feet from the place where the accident occurred. Other witnesses estimated that the car did not in fact stop until it passed 150 to 200 feet beyond the place of the accident. If the jury believed the latter witnesses, as they had the right to do, they were justified in concluding that the car was running at a much greater speed and that no effort was made to check the speed until the moment of the accident. And if they further believed that the circumstances should have apprised the motor-man of danger when his car was at a considerable distance from the place of the collision their verdict is fully justified.

The judgment is affirmed.